UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ELITE MILLER,

        Plaintiff,

v.

ANDREA LINDHOUT EDGER et al.,

        Defendants.
_____/

Case No. 1:22-cv-306

Honorable Sally J. Berens

**OPINION**

    This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has paid the full filing fee for this matter. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 3.)

    This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

    "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.   Factual Allegations

Plaintiff is presently incarcerated with the MDOC at the Richard A. Handlon Correctional Facility (MTU) in Ionia, Ionia County, Michigan. The events about which he complains, however, occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Plaintiff sues Doctor Scott Holmes and Physician's Assistant Andrea Lindhout Edger.

Plaintiff alleges that on November 4, 2018, he submitted a grievance in which he complained about Defendant Holmes violating MDOC Policy Directive 03.04.125, "Medical

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Emergencies," and MDOC Policy Directive 03.04.100, "Health Services." (ECF No. 1, PageID.3.) Plaintiff asserted that he had submitted many complaints regarding blood in his stool, and that Defendant Holmes "refused to send [him] to an outside medical specialist about why he had blood in his stool consistently." (*Id.*) Defendant Holmes told Plaintiff that he could not "figure out what is medically wrong with him." (*Id.*) Plaintiff asked to be referred "to an outside medical specialist before he die[d] or [got] cancer." (*Id.*) Plaintiff avers that he was "under an extreme situation because [he] was bleeding profusely from his rectum and thought that he was going to die." (*Id.*) On November 18, 2018, Plaintiff was scheduled for a follow-up appointment regarding the blood in his stool. (*Id.*, PageID.3–4.)

Throughout 2019 and 2020, Plaintiff submitted numerous health care requests regarding the issue. (*Id.*, PageID.4–5.) On December 17, 2020, Plaintiff was taken to Sparrow Hospital in Carson City, Michigan, where he received a colonoscopy. (*Id.*, PageID.6.) Plaintiff was initially diagnosed with internal hemorrhage but was ultimately diagnosed with prostatitis and ulceration. (*Id.*) Plaintiff claims that the "year and a half delay in referring [him] to an outside medical specialist contributed to the escalation of [his] health problems." (*Id.*)

Plaintiff has attached numerous copies of health care requests and grievances to his complaint. Those documents indicate that Plaintiff repeatedly complained about the blood in his stool during his incarceration at DRF. (ECF Nos. 1-1, 1-2, 1-3, 1-4, 1-24.) Specifically, on November 9, 2018, Plaintiff submitted a grievance mentioning Defendant Holmes by name and complaining that Defendant Holmes refused to send him to see a specialist. (ECF No. 1-1, PageID.13.) On November 29, 2018, Plaintiff's Step I grievance was rejected as "untimely per healthcare." (*Id.*) Plaintiff's Step II appeal was denied on December 20, 2018. (*Id.*, PageID.14.) Although Plaintiff provides documentation of additional contacts with healthcare personnel at

4

DRF during April of 2019 (ECF Nos. 1-3, 1-4), nothing in Plaintiff's complaint or exhibits mentions any contact with Defendants Holmes or Edger after November 2018. At some point after April 10, 2019, and before February 18, 2020, Plaintiff was transferred to the G. Robert Cotton Correctional Facility (JCF) in Jackson, Jackson County, Michigan, where he continued to submit health care requests and complaints about the same issue.

Based on the foregoing, Plaintiff asserts violations of his Eighth and Fourteenth Amendment rights, the Michigan Constitution, MDOC Policy Directive 03.03.130, and the Hippocratic oath. (*Id.*, PageID.8.) Plaintiff seeks injunctive relief as well as compensatory and punitive damages. (*Id.*, PageID.9.)

## II.     Request to Appoint Counsel

In his complaint, Plaintiff requests that counsel be appointed to represent him. (*Id.*) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's request for the appointment of counsel will, therefore, be denied.

### III.     Failure To State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983

is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendant Edger

Although Plaintiff sues Defendant Edger, his complaint is completely devoid of any allegations regarding her. While Plaintiff alleges that Defendants collectively violated his rights, his use of the collective "Defendants" fails to plausibly suggest that Defendant Edger was personally involved in his treatment (or lack thereof). Where an individual is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). A claimed constitutional violation must be based upon active unconstitutional behavior. *See Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Plaintiff's assertions are insufficient to allege a plausible constitutional claim against Defendant Edger. The Court, therefore, will dismiss Plaintiff's claims against her.

### B. Defendant Holmes

Plaintiff asserts Eighth and Fourteenth Amendment claims, as well as claims regarding violations of MDOC policy, against Defendant Holmes for actions taken in 2018. Plaintiff's claims against Defendant Holmes are, however, untimely. State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268–69 (1985). For civil rights suits filed in Michigan under Section 1983,

the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.[2]

As noted above, Plaintiff asserts claims against Defendant Holmes arising in 2018. He had reason to know of the harm done to him at the time it occurred. Plaintiff's exhibits do not set forth any further contact with Defendant Holmes after November of 2018. Hence, Plaintiff's claims against Defendant Holmes accrued in 2018. Plaintiff, however, did not file his complaint until April 2022, well past Michigan's three-year limit. Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated. *See* Mich. Comp. Laws § 600.5851(9). Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations. *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 39 F. App'x 205, 207 (6th Cir. 2002).

The statute of limitations is tolled for the period during which a plaintiff is exhausting his available state administrative remedies. *See Brown v. Morgan*, 209 F.3d 595, 596-97 (6th Cir. 2000).

---

[2] 28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990. The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under Section 1981 does not apply to prisoner claims under 42 U.S.C. §1983 because, while Section 1983 was amended in 1996, prisoner civil rights actions under Section 1983 were not "made possible" by the amended statute. *Id.* at 382.

> The Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1999) . . . . This language unambiguously requires exhaustion as a mandatory threshold requirement in prison litigation. Prisoners are therefore prevented from bringing suit in federal court for the period of time required to exhaust "such administrative remedies as are available."

*Id.* at 596 (citing *Harris v. Hegmann*, 198 F.3d 153, 157-59 (5th Cir. 1999) (per curiam), and *Cooper v. Nielson*, 194 F.3d 1316, 1999 WL 719514 (9th Cir. 1999)). Plaintiff's exhibits indicate that he exhausted his administrative remedies with respect to his claims against Defendant Holmes by the end of 2018. (ECF No. 1-1.) Nevertheless, even with the benefit of such tolling, Plaintiff's claim is untimely.

A claim barred by the statute of limitations is subject to dismissal for failure to state a claim. *See Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim . . . ."); *see also Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (holding that if, on the face of a complaint, the allegations show that relief is barred by an affirmative defense (lack of exhaustion), the complaint is subject to dismissal for failure to state a claim) (citing *Jones*, 549 U.S. at 215); *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (when a complaint on its face is barred by the statute of limitations, it fails to state a claim). Because Plaintiff's Section 1983 claims against Defendant Holmes are untimely, they will be dismissed for failure to state a claim.

### C.  State Law Claims

Plaintiff alleges further that Defendant Holmes violated the Michigan Constitution as well as the Hippocratic oath. (ECF No. 1, PageID.8.) As an initial matter, "violating the Hippocratic oath does not state a claim upon which relief can be granted." *See Moore v. St. John's Hosp.*, No.

9

15-4177-SEM-TSH, 2016 WL 1735769, at *3 (C.D. Ill. Mar. 23, 2016). The Court, therefore, construes Plaintiff's Hippocratic oath claim against Defendant Holmes to be a medical malpractice claim. As noted above, however, Section 1983 does not provide redress for violations of state law. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995). Plaintiff's assertions that Defendant Holmes violated state law, therefore, fail to state a claim under Section 1983.

Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction, and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also Southard v. Newcomb Oil Co., LLC*, 7 F.4th 451, 455 (6th Cir. 2021) (citing *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (recognizing that once a federal court no longer has federal claims to resolve, it "should not ordinarily reach the plaintiff's state-law claims)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon*, 465 F.3d at 728 ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues.") (internal quotations omitted). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction regarding Defendant Holmes, as well as with regard to any state law claims Plaintiff may be asserting against Defendant Edger. The Court, therefore, will dismiss Plaintiff's state law claims without prejudice.[3]

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also deny Plaintiff's request for the appointment of counsel. (ECF No. 1, PageID.9.)

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to Section 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of Section 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

---

[3] 28 U.S.C. § 1367(d) provides that if a plaintiff asserts state law claims under the federal court's supplemental jurisdiction, and those claims are subsequently dismissed without prejudice, the statute of limitations for such claims is tolled while those claims are pending in federal court and for 30 days after dismissal of such by the federal court. That provision, on its terms, refers to the tolling of the running of the statute of limitations for the entire time it is pending; it does not constitute a mere grace period of only 30 days after dismissal for refiling. *See Artis v. Dist. of Columbia*, 138 S. Ct. 594, 598 (2018).

    This is a dismissal as described by 28 U.S.C. § 1915(g).

    A judgment consistent with this opinion will be entered.

Dated: April 26, 2022                                                 /s/ Sally J. Berens  
                                                                                   SALLY J. BERENS  
                                                                                   U.S. Magistrate Judge